### In re FRANK'S WILL.

(Surrogate's Court, Monroe County. May 9, 1910.)

1. WILLS (§ 302*)—EXECUTION—EVIDENCE.

　　In proceedings to probate a will, evidence *held* to show that the will was properly executed.

　　[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 700–710; Dec. Dig. § 302.*]

2. WILLS (§§ 55, 166*)—TESTAMENTARY CAPACITY—UNDUE INFLUENCE—EVIDENCE.

　　In proceedings to probate a will, evidence *held* to show that testator at the time he made the will had testamentary capacity, and that the execution of the will was not procured through undue influence.

　　Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–161, 421–437; Dec. Dig. §§ 55, 166.*]

Proceedings to probate the will of Albert E. Frank. Will admitted to probate.

H. F. Remington, for proponent.
S. Wallace Dempsey, for contestant Slocum.
W. T. Plumb, for contestant Frank.

BROWN, S. The will of the above-named decedent, bearing date the 19th day of March, 1909, offered for probate herein, is contested by the heirs at law of the deceased on the grounds·of improper execution, unsoundness of mind, and of undue influence exerted upon him.

The petition for the probate of said will shows that the testator left real estate stated to be valued at $1,500 and personal property amount-

---

ing to $75. It is intimated that the value of his interest in the real estate would be less, and that there is a mortgage on said real estate of $400. The testator had been sick for some time, but rapidly grew worse the last day or so of his life, and died in the neighborhood of an hour after the execution of the will offered for probate. While there is some conflicting evidence relative to the acts which took place at the time of the execution of the will, after careful consideration of the evidence, I am of the opinion that the said will was executed in substantial conformity with the statute.

It appears that Mr. Frank, on the afternoon of his death, said to his brother and the physician in attendance that he wanted all his property to go to Margaret Frank; that thereupon a Mr. Hamilton was sent for, who came, and after a consultation in the house, not with Albert E. Frank, however, returned to his office, prepared some papers and returned to the house. Mr. Hamilton came into the room where the testator lay, read the will over to him, and told him it was giving his property to Margaret Frank, and testator said that was all right, and there is evidence that he further said it was his wish. The testator was asked then whether he would sign his name or make his signature by mark, and he said, "by mark." Thereupon a pen was placed in his hand, and he made his mark, in the presence of two witnesses, the doctor and the nurse, who signed their names as witnesses to his signature. He was then asked if he wished them to sign as witnesses to his will, and he said that he did, and thereupon they also signed their names again at the end of the attestation clause as witnesses to the will. The signing of the witnesses was done in the presence of the testator and in the presence of each other. While some of the witnesses that were in and out during this time did not see or hear all these things done, the evidence of Mr. Hamilton and the two subscribing witnesses satisfies this court that the above facts have been proved relative to the signing, declaration, and execution of the will.

On the question of testamentary capacity, there is no question but that the deceased was very weak physically and near the end of his mortal existence. He was afflicted with a cancer of the stomach, and the progress of the disease had been very rapid toward bringing life to a close within a short time after symptoms of immediate death appeared. Although weak and almost in extremis, nevertheless his mind appears clear. He appears to have had a purpose, and to have expressed that purpose, that he wished the beneficiary named in the will, Margaret Frank, to receive his property, and when the will was brought to him embodying such a result and was read to him he recognized that it was in conformity to his previously expressed wish, and the evidence of the doctor, one of the witnesses, is very clear as to his being conscious at the time of the making of the will, and practically up to the time of death. A man in the condition that he was in at that time was not likely to be talking lightly or paying attention to everybody that came into the room, and particularly not if his mind was concentrated upon getting a will prepared, anticipating immediate dissolution. I therefore find from the evidence that the testator was at the time of the making of the will, in the contemplation of the stat-

ute, of sound mind and memory, and capable of making a will valid to pass real and personal property.

The further objection is made that the will was executed through undue influence exerted upon the testator. No evidence has been produced by the contestant which raises any presumption of undue influence of Margaret Frank exerted upon the decedent, and there is no evidence of any undue influence being exerted on her part, although some months before decedent's death it is shown that he said he would like, if he were able, to purchase a piano for a grandchild, a daughter of his own daughter. That is no evidence of any intent to remember either the daughter or the granddaughter in his will, and, considering the history of the family, there is nothing unreasonable or strange in the terms of the will executed by the deceased. I therefore find that the will was not procured through undue influence of any person exerted upon the decedent.

In recapitulation, I find as matters of fact that the deceased, Albert E. Frank, died at East Rochester, in the county of Monroe, on the 19th day of March, 1909, leaving a last will and testament, bearing date that day, which was signed by him by mark in the presence of two witnesses, to whom he declared the same to be his last will and testament and requested them to sign their names as witnesses thereto, which they did in his presence and in the presence of each other; that at the time of the execution of the said will he was of sound mind and memory, and capable of making a will valid to pass real and personal property; and that said will was executed when the deceased was free from restraint. I find as a conclusion of law that the said will offered for probate herein should be admitted to probate as a will valid to pass real and personal property.

Let findings be prepared in accordance with this decision, and decree entered thereupon, upon five days' notice, without costs to either party as against the other. Let the stenographer's fees, amounting to $63.-07, be paid by the executor named in the will as a disbursement, payable out of the estate.